NORTHCUTT, Judge.
 

 Corey Bennett was convicted of trafficking in cocaine, possession of marijuana, and possession of paraphernalia, all based on circumstantial evidence that he was in constructive possession of the contraband. We are required to reverse because the evidence was insufficient to support the convictions. This disposition makes it unnecessary for us to reach a suppression issue Bennett has raised on appeal, but we will comment briefly on it.
 

 The evidence at trial reflected that Bennett was wanted on felony charges, although no arrest warrant had been issued. A Tampa police officer received a tip that Bennett could be found at a certain residential address. The tipster reported that Bennett was outside the front of the resi
 
 *1183
 
 dence, possibly participating in a drug deal.
 

 At the given address there was a main house in the front and a second dwelling, a cottage of sorts, in the rear. Bennett’s grandmother and some other family members lived in the main residence. The State presented no evidence to show who lived in the rear building, which was a small, one-bedroom dwelling with a living room, kitchen, and bath.
 

 As the officer made his way to the location, the tipster reported that Bennett had run to the rear building. When the officer arrived, he proceeded to the cottage and knocked on the door. Receiving no response, he then walked around the structure and observed a broken window. He looked through the window into the bedroom and spied Bennett peeking out from the adjoining bathroom. The officer announced his presence and his intention to arrest Bennett. Bennett refused the officer’s order to come out, whereupon the officer climbed through the broken window and made the arrest.
 

 After waiving his rights, Bennett first told the officer that he did not live in the cottage and did not know who did. He claimed that he had found the door open and had run inside. After the officer mentioned the possibility of burglary or trespass charges, Bennett said that he stayed there sometimes. The officer asked for and received Bennett’s permission to search the premises.
 

 The search revealed contraband in the living room and bedroom. On the lower shelf of an entertainment center in the living room, the officer found two slabs of crack cocaine, a baggie of marijuana, and a digital scale and razor blade with cocaine residue. In the bedroom, a second officer found an open cardboard box full of men’s clothing. Also inside was a small plastic sandwich bag box, and it contained seven slabs of crack cocaine. A man’s shirt was lying draped in or across the top of the cardboard box, and Bennett’s driver’s license was found in the shirt pocket. There was also a letter, addressed to Bennett, somewhere in the cardboard box.
 

 At the conclusion of the State’s case, Bennett moved for a judgment of acquittal, arguing that the State failed to prove his constructive possession of the drugs and paraphernalia. The trial court denied the motion, and Bennett argues the same point on appeal.
 

 We review the denial of a motion for judgment of acquittal under a de novo standard.
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002). Where, as here, the evidence of the defendant’s guilt is entirely circumstantial, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.
 
 State v. Law,
 
 559 So.2d 187, 188 (Fla.1989). This is so regardless of how, strongly the evidence may suggest the defendant’s guilt.
 
 Id.
 
 To be sure, the question of whether the evidence fails to exclude all reasonable hypotheses of innocence ultimately is for the jury, and a conviction that is supported by substantial, competent evidence will not be reversed.
 
 Jackson v. State,
 
 995 So.2d 535, 539 (Fla. 2d DCA 2008) (citing
 
 Law,
 
 559 So.2d at 188). But if the State does not offer evidence that is inconsistent with the defendant’s hypothesis, “ ‘the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law.’ ”
 
 Law,
 
 559 So.2d at 189 (quoting
 
 Lynch v. State,
 
 293 So.2d 44, 45 (Fla. 1974)).
 

 Here, Bennett was not shown to have physically possessed the contraband.
 
 See Sundin v. State,
 
 27 So.3d 675, 676 (Fla. 2d DCA 2009) (explaining that actual
 
 *1184
 
 possession is shown when contraband is found in the defendant’s hand, on his or her person, or within reach and under the defendant’s control). Thus it was necessary for the State to prove that he had it in his constructive possession.
 
 See id; Santiago v. State,
 
 991 So.2d 439, 441 (Fla. 2d DCA 2008). To prove constructive possession, the State must show beyond a reasonable doubt that the defendant knew of the presence of the contraband and that he had the ability to exercise dominion and control over it.
 
 Wagner v. State,
 
 950 So.2d 511, 512 (Fla. 2d DCA 2007);
 
 see also Evans v. State,
 
 32 So.3d 188,189 (Fla. 1st DCA 2010) (“Constructive possession exists where the accused does not have physical possession of the contraband but knows of its presence on or about the premises and can maintain dominion and control over it.”) (citing
 
 Brown v. State,
 
 428 So.2d 250, 252 (Fla.1983)).
 

 The jury could reasonably conclude that Bennett knew of the contraband in the living room because it was in plain view. But this in itself did not suffice to prove that he had dominion and control over the contraband. To satisfy this element of the State’s proof, the surrounding circumstances must support the inference of “ ‘a conscious and substantial possession by the accused, as distinguished from a mere involuntary or superficial possession.’ ”
 
 Jackson,
 
 995 So.2d at 539 (quoting
 
 Reynolds v. State,
 
 92 Fla. 1038, 111 So. 285, 286). Mere proximity to contraband is not enough.
 
 Isaac v. State,
 
 730 So.2d 757, 758 (Fla. 2d DCA 1999). Therefore, the fact that contraband was in the defendant’s plain view does not support an inference that the defendant had control over it unless the defendant had control over the premises.
 
 Sundín,
 
 27 So.3d at 676-77 (rejecting any inference of control over glass pipe in plain view when evidence showed that defendant was only visitor to hotel room and not occupant of room).
 

 Here, the evidence failed to show that Bennett had control over the premises. There was no evidence to prove that this was Bennett’s residence (a point made clear by the State’s argument on the suppression issue, i.e., that Bennett lacked standing to assert an expectation of privacy in the premises). The only evidence on this topic was Bennett’s statement to the arresting officer that he sometimes stayed at the cottage. In other words, the evidence proved at most that Bennett was a visitor.
 

 Because Bennett’s dominion and control of the contraband could not be inferred from his control of the premises, the State was obliged to prove this element by independent evidence.
 
 See Sundin,
 
 27 So.3d at 677;
 
 see also J.S.M. v. State,
 
 944 So.2d 1143 (Fla. 2d DCA 2006). Generally, such independent proof can be established by the admission into evidence of a pretrial statement made by the accused, by witness testimony, or by scientific evidence.
 
 Santiago,
 
 991 So.2d at 442. But Bennett made no incriminating statements, and no eyewitness testimony or scientific evidence such as fingerprints linked him to the drugs. We conclude that the State failed to prove Bennett was in constructive possession of the contraband found in plain view in the living room.
 

 An additional fact requires further analysis vis-a-vis the drugs in the bedroom. Bennett’s driver’s license and a piece of his mail were found on or in the cardboard box that contained unidentified clothing and the sandwich bag box containing drugs. In some cases, a defendant’s knowledge of and dominion and control over contraband may be inferred where the contraband is found in or about other personal property that is owned or con
 
 *1185
 
 trolled by the defendant.
 
 Jackson,
 
 995 So.2d at 540. Thus, the contraband at issue in
 
 Jackson
 
 was found in Jackson’s residence, inside a change purse that, along with a cigarette case containing Jackson’s credit card, had spilled from a larger purse belonging to Jackson.
 

 Here, in contrast, the evidence did not show that this was Bennett’s residence, nor did it suggest how many or when others may have visited or used the cottage. Neither did the evidence prove who owned the clothes in the open box. Certainly, the location of Bennett’s personal items in proximity to the sandwich bag box in which the drugs were concealed might be consistent with his having knowledge of the drugs and dominion and control over them. But it is equally susceptible of the reasonable hypothesis that the drugs were in the possession and control of the owner or another occupant of the premises and that Bennett simply threw his belongings over or into the open cardboard box without knowing of the drugs inside.
 
 See J.S.M.,
 
 944 So.2d at 1144 (citing
 
 Taylor v. State,
 
 319 So.2d 114 (Fla. 2d DCA 1975)). Thus, the State’s circumstantial evidence failed to prove that Bennett was in constructive possession of the contraband, and the trial court erred in denying Bennett’s motion for judgment of acquittal.
 

 Although our decision renders moot the suppression issue in this case, we discuss it briefly. The officer’s warrantless entry into the cottage was pursuant to a “felony pick-up order” for Bennett’s arrest on outstanding drug charges. The officer explained that a pick-up order is signed by a police supervisor based on a criminal report affidavit and then taken to dispatch where it is entered into a database. He explained that a warrant, on the other hand, is based on a charging document, is signed by a judge, and is thereafter entered into the computer system.
 

 In his motion to suppress and on appeal, Bennett argues that a pick-up order is not a warrant and did not authorize the officer’s entry into the premises. The State convinced the trial court that the officer’s warrantless entry was justified by section 901.19(1), Florida Statutes (2007), which provides in pertinent part as follows: 901.19 Right of officer to break into building.
 

 (1) If a peace officer fails to gain admittance after she or he has announced her or his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, the officer may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.
 

 We agree that the pick-up order authorized a warrantless arrest.
 
 See
 
 § 901.15(2) (authorizing officer to make warrantless arrest when “[a] felony has been committed and [the officer] reasonably believes that the person committed it”). But we cannot agree that the statute was a proper basis for the officer’s entry into the dwelling.
 

 The United States Supreme Court has clearly held that “the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect’s home in order to make a routine felony arrest.”
 
 Payton v. New York,
 
 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (citations omitted). In reaching this result, the Supreme Court had before it New York statutes, similar to the Florida statute cited by the State and described above, which (1) allowed a warrantless arrest when a felony was committed and the officer had reasonable cause to believe it was committed by
 
 *1186
 
 the person to be arrested, and (2) allowed an officer, announcing his office and purpose, to break into a building after being refused admittance.
 
 Id.
 
 at 578 n. 6., 100 S.Ct. 1871 In fact, the Supreme Court cited Florida’s statute, section 901.19, in its discussion of similar statutes enacted by some twenty-four states,
 
 id.
 
 at 598 n. 46, 100 S.Ct. 1371; and the Court later noted that Florida was one of only two states whose courts had found warrantless entries under such circumstances to be constitutional,
 
 id.
 
 at 600,100 S.Ct. 1871.
 

 While there are exceptions to the warrant requirement, such as consent, exigent circumstances, and hot pursuit, the State did not rely on any exceptions here. It relied solely on the statute to give effect to the pick-up order. But the statute must be applied within the constitutional framework set forth by the Supreme Court.
 
 See
 
 Art. I, § 12, Fla. Const, (requiring the Florida Constitution’s protection from unreasonable search and seizures to be interpreted in conformity with the United States Supreme Court’s Fourth Amendment jurisprudence).
 

 To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.
 

 Payton,
 
 445 U.S. at 588-89, 100 S.Ct. 1371 (quoting with approval
 
 United States v. Reed,
 
 572 F.2d 412, 423 (2d Cir.1978)). Thus, the State’s reliance on probable cause and section 901.19 is misplaced.
 

 This was made clear in
 
 Minnesota v. Olson,
 
 495 U.S. 91, 94, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), where the Supreme Court applied
 
 Payton
 
 to hold that the Fourth Amendment rights of an overnight guest were violated by law enforcement’s entry into a dwelling based solely on “a pickup order, or ‘probable cause arrest bulletin.’ ”
 
 See also Stevens v. State,
 
 552 So.2d 1082, 1084 (Fla.1989) (recognizing that Florida had previously “authorized a warrantless arrest of a person in his or her home based on probable cause” but that the Supreme Court, in
 
 Payton,
 
 “rejected the Florida view and held that it was unlawful to effect a routine felony arrest in a private residence absent exigent circumstances unless a warrant was obtained”) (citations and footnote omitted).
 

 The State also argues that Bennett lacked standing to challenge the officer’s entry.
 
 See McCauley v. State,
 
 842 So.2d 897, 900 (Fla. 2d DCA 2003) (allowing State to raise standing for first time on appeal). Given our decision to reverse Bennett’s convictions based on the insufficiency of the evidence, we find it unnecessary to reverse on the suppression issue or remand for a new suppression hearing.
 

 We reverse Bennett’s convictions and remand with instructions to discharge him.
 

 WHATLEY and KELLY, JJ., Concur.