CASANUEVA, Judge.
 

 Luther T. Sasser appeals his convictions for one count of simultaneous possession of mullet in excess of the recreational daily bag limit and any gill or other entangling net, and one count of improper carriage of a proscribed net across Florida waters. The State did not present sufficient evidence to link Mr. Sasser to the proscribed gill net in either charge. Thus, the trial court erred in denying Mr. Sasser’s motion for judgment of acquittal. We reverse.
 

 Between 3:00 and 3:30 a.m., Officer Burton of the Florida Game and Wildlife Conservation Commission came upon two boats sitting alongside one another in a mangrove area. Mr. Sasser was standing on his boat, a white skiff; the other boat, a green boat, was vacant. Officer Burton heard people fleeing through the man
 
 *1152
 
 groves, presumably the operators of the green boat. Both boats contained a substantial amount of mullet, but it was the green boat that harbored the proscribed gill net on its deck. Approximately three hours earlier, one of Mr. Sasser’s neighbors watched both Mr. Sasser’s boat and a green boat leaving the canal by Mr. Sas-ser’s house. Based upon these facts, Mr. Sasser was charged with two offenses.
 

 The first of the two charges is'statutorily defined as follows:
 

 (3) PENALTIES FOR USE OF ILLEGAL NETS.—
 

 (a) It is a major violation pursuant to this section, punishable as provided in paragraph (b) for any person, firm, or corporation to be simultaneously in possession of any species of mullet in excess of the recreational daily bag limit and any gill or other entangling net as defined in s. 16(c), Art. X of the State Constitution. Simultaneous possession under this provision shall include possession of mullet and gill or other entangling nets on separate vessels or vehicles where such vessels or vehicles are operated in coordination with one another including vessels towed behind a main vessel.
 

 § 370.021, Fla. Stat. (2007). Therefore, to establish the commission of this crime beyond a reasonable doubt, the State was required to prove (1) that Mr. Sasser was in possession of any species of mullet, (2) that the amount of that mullet exceeded the recreational daily bag limit, (3) that Mr. Sasser also possessed a gill or other entangling net, and (4) that Mr. Sasser possessed the mullet and net simultaneously. It was undisputed at trial that Mr. Sasser’s boat contained mullet in an amount that exceeded the recreational daily bag limit. It was also undisputed that the net on the green boat was a proscribed net. The only element at issue was whether Mr. Sasser had possession of that net.
 

 No evidence established that Mr. Sasser had actual possession of the net. “[Ajctual possession is shown when contraband is found in the defendant’s hand, on his or her person, or within reach and under the defendant’s control.”
 
 Bennett v. State,
 
 46 So.3d 1181, 1183-84 (Fla. 2d DCA 2010) (citing
 
 Sundin v. State,
 
 27 So.3d 675, 676 (Fla. 2d DCA 2009)). Therefore, we examine whether there was evidence that Mr. Sasser constructively possessed the net.
 
 See id.
 
 at 1184. “To establish constructive possession, the State must prove beyond a reasonable doubt (1) that the defendant had knowledge that the contraband was within his presence and (2) that the defendant had the ability to exercise dominion and control over the contraband.”
 
 Santiago v. State,
 
 991 So.2d 439, 441 (Fla. 2d DCA 2008). Here, the State offered no evidence to demonstrate that Mr. Sasser had knowledge of or dominion and control over the net on the green boat. The evidence did not show that Mr. Sasser owned the green boat, was piloting the green boat, or had ever been on the green boat. While there was some evidence suggesting that the fish on Mr. Sasser’s boat were caught with a gill net, it did not show that they were caught with the net on the green boat or that Mr. Sasser knew they were caught with that net.
 

 The State also could have established that Mr. Sasser had possession under a third definition that is specific to section 370.021(3). Offenders may be in “simultaneous possession” of the requisite fish and net if they are in “possession of mullet and gill or other entangling nets on separate vessels or vehicles where such vessels or vehicles are operated in coordination with one another including vessels towed behind a main vessel.” § 370.021(3). Here, the evidence demonstrated that the two vessels departed at the same time and were discovered together three to four hours later. However, the State did not present any evidence to show that the two
 
 *1153
 
 vessels were “operated in coordination with one another” at any time. What each boat did during those missing hours remains a mystery. To conclude that Mr. Sasser hooked up with the green boat to go fishing with the gill net requires an impermissible pyramiding of inferences.
 
 See Evans v. State,
 
 26 So.3d 85, 95 (Fla. 2d DCA 2010) (Wallace, J., concurring in part; dissenting in part) (stating that evidence is not sufficiently conclusive if the fact-finder must draw two or more inferences to establish the existence of a criminal act).
 

 We must also address the fact that the State charged Mr. Sasser as a principal. To succeed on a principal theory, the State was required to prove that Mr. Sas-ser aided, abetted, counseled, hired, or otherwise procured another to commit the offense of simultaneous possession of the gill net and the mullet.
 
 See
 
 § 777.011, Fla. Stat. (2007). However, there was no evidence that another specific person ever simultaneously possessed the gill net and the mullet or that Mr. Sasser ever helped another person to do so. The State’s inclusion of the principal theory in the charging document was unwarranted.
 

 We discover the same fatal flaws in Mr. Sasser’s conviction for carriage of a proscribed net across Florida waters. That charge is statutorily described as follows:
 

 Every vessel containing or otherwise transporting in or on Florida waters any gill net or other entangling net and every vessel containing or otherwise transporting in or on nearshore and inshore Florida waters any net containing more than 500 square feet of mesh area shall proceed as directly, continuously, and expeditiously as possible from the place where the vessel is regularly docked, moored, or otherwise stored to waters where the use of said nets is lawful and from waters where the use of said nets is lawful back to the place where the vessel is regularly docked, moored, or otherwise stored or back to the licensed wholesale dealer where the catch is to be sold. Exceptions shall be provided for docked vessels, for vessels which utilize nets in a licensed aquaculture operation, and for vessels containing trawl nets as long as the trawl’s doors or frame are not deployed in the water. Otherwise, hovering, drifting, and other similar activities inconsistent with the direct, continuous, and expeditious transit of such vessels shall be evidence of the unlawful use of such nets. The presence of fish in such a net is not evidence of the unlawful use of the net if the vessel is otherwise in compliance with this section.
 

 § 370.092(2). The State charged Mr. Sas-ser as a principal to this crime as well.
 

 To be guilty of this offense, one must be in control of a vessel that is improperly transporting a proscribed net. As previously discussed, the proscribed net was on the green boat, not on Mr. Sasser’s boat. Mr. Sasser’s boat was not transporting a proscribed net. As in the first charge, the principal theory also fails to repair the State’s dearth of evidence related to this second charge. The State presented no evidence that Mr. Sasser aided another person in carrying the net.
 

 The evidence is insufficient to support convictions for these two statutory offenses. Accordingly, we conclude that the trial court erred in denying the motion for judgment of acquittal. Thus, we reverse Mr. Sasser’s judgment and sentences and remand for him to be discharged.
 

 Reversed and remanded.
 

 LaROSE and CRENSHAW, JJ., Concur.