WALLACE, Judge.
A jury found Matthew Lee Rangel guilty of possession of cocaine, a violation of section 893.13(6)(a), Florida Statutes (2010), and sale of cocaine within a thousand feet of a place of worship, a violation of section 893.13(l)(e)(l). On appeal, Mr. Rangel challenges his judgment and sentences on two grounds.
We agree with Mr. Rangel that the State failed to present sufficient evidence to establish that he was in constructive possession of cocaine found in a vehicle in which he was merely a passenger. Mr. Rangel’s remaining argument is without merit and does not warrant discussion. Because the trial court erred in denying Mr. Rangel’s motion for judgment of acquittal on the possession charge, we reverse Mr. Rangel’s judgment and sentence for possession of cocaine. We affirm his judgment and sentence for sale of cocaine within a thousand feet of a place of worship.
I. FACTUAL BACKGROUND
On May 20, 2010, Detective Timothy Dugan of the Lee County Sheriffs Office contacted a confidential informant to set up a drug buy. The confidential informant called Mr. Rangel and arranged to buy crack cocaine. Mr. Rangel agreed to the transaction and instructed the confidential informant to meet him in the parking lot of a nearby Taco Bell.
Several minutes later, Mr. Rangel arrived at the specified location in a tan Jaguar accompanied by three others — the driver of the vehicle and two additional passengers. The confidential informant approached the rear passenger window, where Mr. Rangel was seated, and exchanged money for crack cocaine, which the confidential informant described as an aggregation of pieces received from all occupants of the vehicle but handed to him *43 by Mr. Rangel. Detective Dugan observed this entire transaction from a vantage point about one hundred yards away.
After the transaction was complete, the confidential informant delivered the contraband to Detective Dugan, and Detective Dugan instructed Sergeant Mark Sheffield to attempt to stop the Jaguar in which Mr. Rangel was a passenger. Sometime later, Sergeant Sheffield stopped the Jaguar for a window tint violation, although it is unclear how much time elapsed between the transaction and the stop. Nonetheless, at the time of the stop, one of the vehicle’s other three occupants present at the transaction was no longer in the vehicle, and Mr. Rangel had moved to the front passenger seat. As Sergeant Sheffield approached the vehicle, he observed Mr. Rangel rummaging in the vicinity of the floor in front of his seat. Although Sergeant Sheffield noticed Mr. Rangel’s movement, he did not know the purpose of the rummaging, nor did he see Mr. Rangel actually touch anything on the floor. Sergeant Sheffield then asked the occupants to get out of the vehicle and requested consent to search them. The occupants, including Mr. Rangel, agreed to the search, but Sergeant Sheffield did not find any narcotics on their persons.
Shortly thereafter, Deputy Jamie Thorpe arrived with a narcotics-detecting dog, and following a sweep of the vehicle, the dog alerted to the presence of narcotics. Deputy Adam Petrulis, who arrived on the scene as backup, and Sergeant Sheffield then performed a search of the vehicle.[1] During the search, Deputy Pe-trulis found a liquid-filled, pint-size plastic container in a caddy containing car cleaning products. The caddy and its contents were located on the floorboard of the front passenger seat where Mr. Rangel had been sitting. Sergeant Sheffield asked Mr. Rangel to identify the contents of the container. Mr. Rangel suggested that Sergeant Sheffield drink the contents to find out.
Deputy Petrulis opened the container, which emitted a fine, white powder. When asked about the contents of the container, the driver of the car stated that the contents were used for cleaning wheel rims. Using a field testing kit, Sergeant Sheffield analyzed the contents of the container, which tested positive for cocaine. Lab results later identified the liquid contents of the container as including ecgonine, a cocaine derivative. The chemist did not determine the percentage of ecgonine contained in the liquid.
Subsequently, the State charged Mr. Rangel with various offenses but proceeded to trial on charges of trafficking in cocaine and sale of cocaine within a thousand feet of a place of worship. At the close of the State’s case, defense counsel moved for a judgment of acquittal on the charge of trafficking in cocaine. The trial court denied the motion and submitted the case to the jury. The jury returned a verdict finding Mr. Rangel guilty of the lesser-included offense of possession of cocaine on the trafficking charge and guilty as charged on sale of cocaine within a thousand feet of a place of worship. The trial court adjudged him guilty on both charges and sentenced him to five years’ prison on the possession charge and seven years’ prison on the sale charge. The trial court designated the sentences to run concurrently.
II. DISCUSSION
On appeal, Mr. Rangel argues that the evidence presented by the State at *44 trial was insufficient to establish that he constructively possessed the container with ecgonine found in the caddy on the floorboard of the front passenger seat. We agree.
“[T]o establish constructive possession ..., the [State] had to demonstrate (1) that the defendant knew of the presence of the contraband and (2) that he or she had the ability to maintain dominion and control over the controlled substance.” Butera v. State, 58 So.3d 940, 942 (Fla. 2d DCA 2011) (citing Links v. State, 927 So.2d 241, 243 (Fla. 2d DCA 2006)). Moreover, if the premises where the contraband is discovered is in joint rather than exclusive possession of the defendant, mere proximity to the contraband is insufficient to prove constructive possession. Id.; Skelton v. State, 609 So.2d 716, 717 (Fla. 2d DCA 1992). In a joint possession scenario, when proximity to contraband is one factor tending to show constructive possession, “the State must present independent proof of the defendant’s knowledge and ability to control the contraband.” Hargrove v. State, 928 So.2d 1254, 1256 (Fla. 2d DCA 2006).
Such proof may consist either of evidence establishing that the accused had actual knowledge of the presence of the contraband, or of evidence of incriminating statements and circumstances other than the mere location of the substance, from which a jury might lawfully infer knowledge by the accused of the presence of the contraband on the premises.
Murphy v. State, 511 So.2d 397, 399 (Fla. 4th DCA 1987); see also Brown v. State, 8 So.3d 1187, 1189 (Fla. 4th DCA 2009); Earle v. State, 745 So.2d 1087, 1089 (Fla. 4th DCA 1999).
Here, evidence of Mr. Rangel’s constructive possession includes his location in the front passenger seat when the vehicle was stopped by the police, his rummaging on the floor where the caddy holding the container was found, and his flippant remark to Sergeant Sheffield when asked to identify the contents of the container. Although Mr. Rangel’s location in the front passenger seat shows that Mr. Rangel was near the container, it does not follow from his mere proximity that he knew of its contents, that he placed it there, or that he could exercise dominion and control over it. Moreover, two other persons were in the car when Sergeant Sheffield made the traffic stop. The presence of others creates a joint-possession situation, rendering Mr. Rangel’s mere proximity insufficient, standing alone, to permit an inference of knowledge of the container’s contents or the ability to exercise dominion and control over the container. See Watson v. State, 961 So.2d 1116, 1117 (Fla. 2d DCA 2007); K.A.K. v. State, 885 So.2d 405, 407 (Fla. 2d DCA 2004); D.M.C. v. State, 869 So.2d 575, 576-77 (Fla. 2d DCA 2003); Skelton, 609 So.2d at 717.
Additionally, no independent proof exists connecting Mr. Rangel to the container— no fingerprints, no testimony by the vehicle’s other occupants, and no incriminating statements by Mr. Rangel. See Bennett v. State, 46 So.3d 1181, 1184 (Fla. 2d DCA 2010) (enumerating the type of independent proof required to permit an inference of dominion and control from mere proximity, including pretrial statements of the accused, witness testimony, and scientific evidence); Culver v. State, 990 So.2d 1206, 1209-10 (Fla. 2d DCA 2008) (noting a lack of independent proof because “the State did not present any fingerprint evidence, admissions, eyewitness testimony, or other evidence tending to establish ... dominion and control”); see, e.g., Meme v. State, 72 So.3d 254, 256-57 (Fla. 4th DCA 2011) (finding sufficient evidence of constructive possession in a jointly occupied vehicle when the defendant, in addition to exhibit *45 ing nervous behavior and rummaging in an area where narcotics were found, made incriminating statements). Without independent proof of knowledge and ability to control, Mr. Rangel’s location near the contraband is not sufficient to establish constructive possession.
Granted, Mr. Rangel was observed rummaging in the area where the caddy holding the container was found. However, the State’s position, which infers dominion and control from this behavior, “requires an impermissible pyramiding of inferences.” State v. Snyder, 635 So.2d 1057, 1058 (Fla. 2d DCA 1994). First, the State’s argument requires the inference that while Mr. Rangel was rummaging, he touched or manipulated the container in some fashion. Second, it then requires the inference that touching the container signified his ability to exercise dominion and control over it. Such inferences may have been plausible had the illicit nature of the contents been readily apparent or if Sergeant Sheffield had actually seen Mr. Ran-gel touch the container, but as the evidence stands, such inferences “ ‘lack[ ] the conclusive nature to support a conviction.’” Evans v. State, 26 So.3d 85, 90 (Fla. 2d DCA 2010) (quoting Edison v. State, 954 So.2d 1235, 1238 (Fla. 2d DCA 2007)).
Furthermore, Mr. Rangel’s rummaging is not, in and of itself, an incriminating act and is subject to numerous, innocent explanations. While the State is not required to rebut every reasonable hypothesis except that of guilt, it is required to submit facts inconsistent with the defendant’s hypothesis of innocence. Cordero-Artigas v. State, 75 So.3d 838, 841 (Fla. 2d DCA 2011). Because Sergeant Sheffield could not see what Mr. Rangel was doing while rummaging and, consequently, could not see whether Mr. Rangel touched the container, the rummaging is arguably nothing more than a different form of proximity. Without additional evidence linking Mr. Rangel to the container, the State has not met its burden.
The dissent states that “the defense presented no discernable, specific theory of innocence.” Mr. Rangel did offer a reasonable hypothesis of innocence in his motion for judgment of acquittal, and it was quite straightforward: He had no knowledge of the presence of the ecgonine in the closed plastic container and lacked the ability to maintain dominion and control over it. In support of his theory, Mr. Rangel pointed out that he was only one of three men in the car. Either or both of the other men could have been responsible for placing the cocaine derivative in the container.
This case is factually similar to Brown, 8 So.3d 1187. In Brown, police arranged for a confidential informant to purchase drugs from the defendant. Id. at 1188. After the transaction concluded, the police stopped the vehicle driven by the defendant, which also contained one other passenger. The officer observed the defendant place an item in the center console and also noted that the defendant appeared nervous and was shaking and that the vehicle smelled like marijuana. The police conducted a search of the defendant and of the defendant’s vehicle and discovered crack cocaine and powdered cocaine on the defendant’s person and Xanax in a jewelry box located within the center console the defendant was observed closing. The defendant was charged with possession of cocaine with intent to sell and possession of Xanax. At trial, the defendant moved for a judgment of acquittal on the charge of possession of Xanax. The trial court denied his motion.
On appeal, the Fourth District found that the State failed to prove constructive possession because the additional circum *46 stances beyond proximity, including the defendant’s nervousness and movements in the area where drugs were found, were insufficient to show knowledge or dominion and control. Id. at 1189. Notably, the Xanax found in the defendant’s vehicle was concealed in a closed container — the jewelry box — and its incriminating nature, therefore, was not readily apparent.
Similarly, in this case, the ecgonine was hidden in a closed, unmarked container filled with a liquid substance, and its illicit nature was not readily observable. The State’s proof was limited to Mr. Rangel’s proximity and rummaging in the area where the caddy rested on the floor. As in Brown, such evidence is insufficient to establish a prima facie case of constructive possession.
The State also highlights as evidence of Mr. Rangel’s dominion and control his flippant remark to Sergeant Sheffield when questioned about the contents of the container. Yet, Mr. Rangel’s remark is not incriminating and does not amount to an admission that he possessed the container. The remark could be viewed as rude, and it may suggest that Mr. Rangel had knowledge of the container’s illicit contents. However, a stacking of inferences is required to arrive at the conclusion that the remark indicated that Mr. Rangel had the ability to exercise dominion and control over the container.
Finally, the evidence is uncontroverted that Mr. Rangel, at one point, had actual possession of crack cocaine that he sold to the confidential informant. The cocaine found within the container, however, was of a liquid or powder variety called ecgo-nine, a cocaine derivative. Mr. Rangel’s actual possession of one type of narcotic does not permit the inference that he possessed a different type of narcotic concealed in a vehicle that he did not own. See id. (finding that “evidence that the defendant agreed to sell the informant crack [later found on his person] does not tend to demonstrate that he had knowledge of Xanax [hidden] in a car that [did not belong to him]”); see also Culver, 990 So.2d at 1209-10 (finding that actual possession of narcotics, standing alone, is insufficient to demonstrate constructive possession when narcotics are found concealed in a jointly occupied vehicle). Furthermore, the confidential informant testified that the crack cocaine he received from Mr. Rangel was collected from all of the vehicle’s occupants. No evidence exists to show that Mr. Rangel’s actual possession of crack cocaine makes an inference of his dominion and control over the container more plausible than an inference of dominion and control by any of the vehicle’s other occupants.
When it is apparent that no legally sufficient evidence has been advanced by the State that would support a jury verdict of guilty, a motion for judgment of acquittal should be granted. Meme, 72 So.3d at 256 (citing Toole v. State, 472 So.2d 1174, 1176-77 (Fla.1985)); see also Isaac v. State, 730 So.2d 757, 758 (Fla. 2d DCA 1999) (“Whether a defendant had dominion and control over contraband is generally a fact issue for the jury, but a judgment of acquittal is proper when there is no evidence from which dominion and control can be inferred.”). Because the State failed to present any substantial, competent evidence linking Mr. Rangel to the ecgonine in the container that did not require impermissible inferential reasoning, it failed to establish a prima facie case of constructive possession. Accordingly, the trial court erred in denying Mr. Rangel’s motion for judgment of acquittal on the possession charge.
III. CONCLUSION
For these reasons, we reverse Mr. Ran-gel’s judgment and sentence for possession *47 of cocaine and remand for his discharge for that offense. We affirm Mr. Rangel’s judgment and sentence for sale of cocaine within a thousand feet of a place of worship.
Affirmed in part, reversed in part, and remanded with directions.
SILBERMAN, C.J., Concurs:
BLACK, J., Dissents with opinion.

. It should be noted that neither Mr. Rangel nor any of the vehicle’s other occupants owned the vehicle, although there is no evidence that it was stolen or operated without permission.