954 So.2d 1235 (2007)
Alonzo Lamart EDISON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-2765.
District Court of Appeal of Florida, Second District.
April 20, 2007.
*1236 James Marion Moorman, Public Defender, and Sarah E. Warren, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Richard E. MacDonald, Assistant Attorney General, Tampa, for Appellee.
FULMER, Chief Judge.
Alonzo Edison was charged with one count of trafficking in cocaine by possession pursuant to sections 893.135(1)(b) and 777.011, Florida Statutes (2003), and one count of possession of methylenedioxymethamphetamine (MDMA; ecstasy) pursuant to section 893.13(6)(a). He was tried with three codefendants[1] and convicted of both charges. On appeal, Edison challenges the judgment and sentence for his conviction on the cocaine charge only. We therefore affirm as to his conviction on the MDMA charge without comment. However, we reverse as to the conviction on the trafficking in cocaine charge because the trial court erred in denying, as to Edison, the four defendants' joint motion for judgment of acquittal after the State presented no independent proof of Edison's control over the cocaine in question.
After a police officer conducted surveillance on one side of a duplex and noted the comings and goings of forty to fifty people over the course of an hour or so, a SWAT team served a search warrant via the front door of the residence using loud distraction devices. The twelve people in the residence all attempted to run out the back door at the same time. Edison was the first person out the door; he was able to run past the police perimeter but was quickly caught. Two others also made it out the door on foot and were caught by police, while the remaining nine individuals fell to the ground near the door and were easily apprehended. Police found a large quantity of cocaine in plain view in the common areas of the residence, including crack cocaine in various stages of processing in the kitchen, and some weapons. There was no fingerprint evidence on any of the drug packages or weapons. Police found five pills, which turned out to be MDMA, and $1380 in cash in Edison's pocket.
After the State rested, one of Edison's codefendants moved for a judgment of acquittal, arguing that the State had not presented sufficient evidence of constructive possession as to any of the defendants. Edison's counsel adopted the motion. Noting that this was a "very close case," the trial court denied the motion. The jury found Edison and his three codefendants guilty as charged.
On appeal, Edison argues that the State failed to present a prima facie case of constructive possession of the cocaine found in the residence. The definition and elements of constructive possession are summarized in the Florida Standard Jury Instructions in Criminal Cases 25.10, which the trial court read to the jury:
Constructive possession means the thing is in a place over which the person has control, or in which the person has concealed it.
If a thing is in a place over which the person does not have control, in order to establish constructive possession the *1237 State must prove the person's (1) control over the thing [and] (2) knowledge that the thing was within the person's presence. . . . [[2]]
Thus, the State was required to prove that Edison was able to exert control over the cocaine and knew that the cocaine was in his presence. Because Edison does not address the knowledge element on appeal, we will limit our discussion to the control element. Edison properly frames his argument in terms of whether the motion for judgment of acquittal should have been granted, thus allowing the issue of control to go to the jury. See Isaac v. State, 730 So.2d 757, 758 (Fla. 2d DCA 1999) ("Whether a defendant had dominion and control over contraband is generally a fact issue for the jury, but a judgment of acquittal is proper when there is no evidence from which dominion and control can be inferred.").
One general principle applicable to possession cases is that "[m]ere proximity to contraband is not enough to establish dominion and control." Id. Instead, "the evidence must establish the defendant's conscious and substantial possession, as distinguished from mere involuntary or superficial possession, of the contraband." Id. Furthermore, because any possession on the part of Edison would have been nonexclusive, given that the State presented no evidence tying any of the four suspects directly to the cocaine, the control element cannot be inferred but must be established by independent proof. See Green v. State, 667 So.2d 208, 211 (Fla. 2d DCA 1995).
Our review of the record compels us to conclude that the State failed to present sufficient evidence that Edison had control over the cocaine. As a preliminary consideration, because there was no evidence that Edison was the owner or an occupant of the residence, the court could not infer that he had the ability to control the cocaine simply because it was in plain view in the common areas. Compare Taylor v. State, 319 So.2d 114, 116 (Fla. 2d DCA 1975) (holding that circumstantial evidence of guilt emanating from the defendant's proximity to illicit drugs in plain view was equally susceptible to the reasonable hypotheses that the defendant was a mere visitor and that the drugs were in the possession and control of the owner or other occupant of the premises), with Brown v. State, 428 So.2d 250, 252 (Fla. 1983) (holding that proof of the discovery of illegal drugs in plain view in the presence or two or more joint occupants of the premises is sufficient to support a conviction for constructive possession).
The State argues, however, that additional facts circumstantially support its prima facie case. First, the State points out that because Edison was the first person to run out the back door when the SWAT team served the search warrant and because the back door exited from the kitchen, Edison must have been in the kitchen at the time. It would therefore not be unreasonable for the jury to infer, the State argues, that Edison was involved *1238 in cooking, thus controlling, the crack cocaine. We conclude, however, that this argument represents an impermissible stacking of inferences. See I.F.T. v. State, 629 So.2d 179, 180 (Fla. 2d DCA 1993) ("Where two or more inferences in regard to the existence of a criminal act must be drawn from the evidence and then pyramided to prove the crime charged, the evidence lacks the conclusive nature to support a conviction."). Here, given that the testimony indicated that the SWAT team's entry at the front door and the suspects' rapid exit out the back door occurred virtually simultaneously, we agree that it is reasonable to infer that Edison was in the kitchen at that moment. Beyond this, however, it cannot necessarily be inferred that Edison was cooking or controlling the crack cocaine. For one thing, the length of time that Edison was in the kitchen prior to his exit cannot be determined from the evidence. The State presented no evidence on whether cocaine residue was found on Edison. Furthermore, because three individuals including Edison were able to run out the back door quickly enough to avoid the pile-up suffered by the remaining suspects, it can just as easily be inferred that it was one or both of the other two individuals who were in the kitchen cooking the crack cocaine. As such, the fact that Edison was the first out the back door does not constitute sufficient evidence of ability to control the cocaine.
The State argues next that flight itself can serve as circumstantial evidence of guilt. Although we acknowledge that "[e]vidence of flight is relevant to infer consciousness of guilt where there is a sufficient nexus between flight and the crime with which a defendant is charged," Powell v. State, 908 So.2d 1185, 1187 (Fla. 2d DCA 2005), here there is no necessary connection between Edison's attempt to run out the back door and any control he may have had over the cocaine. Edison's and the others' flight can be explained by the distraction devices used by the SWAT team when it entered the residence, which created a scene of chaos according to one of the testifying officers. At worst, Edison's flight can be taken as evidence that he was aware of the illegal activity taking place in the residence, but it does not necessarily imply that, among the twelve people in the house, he was able to exert control over the cocaine.
Finally, the State argues that the large amount of cash found on Edison's person is evidence from which a jury could conclude that he was guilty of trafficking in cocaine by possession. The State cites to Barnes v. State, 838 So.2d 641 (Fla. 5th DCA 2003), to support its argument. Barnes, however, is distinguishable. Barnes was one of two passengers in the back seat of a vehicle. He was observed by officers placing clear baggies of a green leafy substance into a cigar box, which he threw into the back of the vehicle when confronted by the officers. The box was found to contain marijuana in wrapped baggies and over $4000 in currency. Barnes was charged with possession with intent to sell. In his defense, he testified that he was routinely paid in cash and did not have a bank account. Id. at 641. The court concluded that Barnes' motion for judgment of acquittal was properly denied; the packages of the drugs and the cash found together with them "support[] the inference that [Barnes] intended to sell the drugs." Id. at 641-42.
As these facts indicate, Barnes does not support the State's position, for at least two reasons. First, in Barnes the cash and the contraband were found together. Here, in contrast, there was no evident physical connection between the cash and the contraband found in the house. Second, *1239 the issue in Barnes was whether the cash supported the intent element of a charge of possession with intent to sell. Possession as such was not at issue; the recital of facts presented above indicates that Barnes was in physical possession of the baggies of marijuana, irrespective of the cash. Here, however, we are concerned with whether Edison's cash somehow demonstrates control, thus constructive possession, and Barnes does not help resolve this issue. See also Stevens v. State, 782 So.2d 550 (Fla. 5th DCA 2001) (large amount of cash found on defendant supported cocaine possession charge in conjunction with evidence that defendant was one of two men seen by deputy holding a cigar tube containing cocaine).
As with the kitchen-related evidence, we are forced to conclude that Edison's possession of cash does not necessarily imply control over the cocaine in the residence. The cash may well have been drug-related, but the State presented no evidence to demonstrate that the cash was tied to the cocaine or that Edison's possession of the cash represented control over the cocaine.
In conclusion, we affirm as to Edison's conviction on the MDMA charge and reverse Edison's judgment and sentence as to the trafficking in cocaine charge with directions that he be discharged as to the trafficking in cocaine charge only.
Affirmed in part, reversed in part, and remanded with directions.
CASANUEVA and SALCINES, JJ., Concur.
NOTES
[1] Each of Edison's codefendants was charged with one count of trafficking in cocaine by possession only.
[2] In the published instructions, the numbered list has a third element"(3) knowledge of the illicit nature of the thing"based on Chicone v. State, 684 So.2d 736 (Fla.1996); see also Brown v. State, 428 So.2d 250, 252 (Fla. 1983) (listing three elements of constructive possession). At the charge conference, however, the trial court and parties discussed several variations on the jury instruction, and the court, over the defendants' objection, decided to omit the third element, based on section 893.101. In section 893.101(2), the legislature found that "knowledge of the illicit nature of a controlled substance is not an element of any offense under [chapter 893, Florida Statutes]." On appeal, Edison does not contest the omission of the third element from the instructions read to the jury.