CRENSHAW, Judge.
Cavokia Evans appeals his judgment and sentence for trafficking in cocaine in violation of section 893.135, Florida Statutes (2005). Among the claims raised, he argues the trial court erred in denying his motion for judgment of acquittal. For reasons discussed below, we find no merit in Evans’ argument that the trial court erred by denying this motion. However, because we find the trial court erred by failing to declare a mistrial after the State made improper comments during closing arguments regarding Evans’ right to remain silent, we reverse his judgment and sentence and remand for a new trial.
I. Background
This case arises from a narcotics investigation of a private residence owned by Ricky Kutner. After receiving several complaints from neighboring residents about possible illegal activity at Kutner’s house, the Pinellas County Sheriffs Office conducted a surveillance of the property. During the course of their investigation, police repeatedly found drug paraphernalia in trash cans located near the street. Based on the paraphernalia found in the trash, law enforcement was able to obtain a search warrant. Law enforcement proceeded to assemble a substantial narcotics team to execute the search warrant during the evening of October 28, 2005.
While the team was approaching the front of the house, a woman standing on the front porch, later identified as Heather Trummell, noticed the officers and alerted the home’s occupants to the impending police raid. The police, realizing that their operation was being compromised, rushed into the front of the residence. In the meantime, several people scattered *88 throughout the house.[1] The police swept the premises and noticed a bathroom door located directly across the hall from a room dubbed the “east bedroom” was slightly ajar. Upon opening the door, they discovered Evans sitting on an open toilet seat with his pants pulled down. Evans was also wearing a pair of latex gloves. The police promptly arrested Evans and found $1785 in cash, mostly in twenty-dollar increments, in Evans’ pants pockets. They noted the water in the toilet was undisturbed and did not contain urine, excrement, or any sign that it had been used to flush any contraband. They also found a man, later identified as Glenn Adams, hiding at the bottom of the bathroom closet attempting to conceal himself with towels. No cocaine was found in the bathroom or on Evans’ gloves.
No one was found in the east bedroom. However, the police did discover forty dollars, a cell phone, and a latex glove strewn across the bed. On the floor by the east side of the bed, they discovered a fake Pepsi soda can and a police scanner. The fake Pepsi soda can held a plastic baggie with pieces of crack cocaine. On the floor by the west side of the bed, they found an open cereal box and another plastic baggie containing crack cocaine. The cereal box, positioned haphazardly on its side, was covered in small amounts of crack cocaine spilling off the box onto the floor. A razor blade was on the floor next to the cereal box. The box itself contained a pair of latex gloves. The police found a plastic Walmart bag nearby containing various CDs, a digital scale, plastic baggies, and a fake Mountain Dew soda can, which also contained a baggie with pieces of crack cocaine.[2] The police also found a razor blade and a drink bottle positioned on an end table along the northwest wall of the room, a drug ledger in a shoebox, keys from a rental car parked in front of Kut-ner’s house, and a cigar box and another latex glove on the dresser along the south wall. Evans’ fingerprints matched prints taken from the cigar box, shoebox, a drink bottle, CDs, rental car, and cereal box. During Evans’ trial, a law enforcement official opined that because the east bedroom appeared to serve as the production and distribution center for the crack cocaine, the gloves could have been used to protect the person cutting and packaging the drugs from having any substances seep into their skin.
II. Evans’ Motion for Judgment of Acquittal
At the conclusion of the State’s case, Evans moved for a judgment of acquittal, arguing the State failed to offer any independent evidence sufficient to establish Evans’ constructive possession of the cocaine. The trial court denied the motion. This appeal follows.
A trial court’s denial of a motion for judgment of acquittal is reviewed under a de novo standard and an appellate court will not reverse a conviction which is supported by competent substantial evidence. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). After viewing the evidence in the light most favorable to the State, if a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, then sufficient evidence exists to sustain the conviction. Id. (citing Banks v. State, 732 So.2d 1065 (Fla. *89 1999)). “However, if the State’s evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant’s reasonable hypothesis of innocence.”[3] Pagan, 830 So.2d at 803; see also State v. Law, 559 So.2d 187, 188 (Fla.1989). If an inconsistency exists between the defendant’s theory of innocence and the State’s evidence, then the trial court should deny the motion for judgment of acquittal and allow the jury to resolve the inconsistency. Boyd v. State, 910 So.2d 167, 181 (Fla.2005). A motion for judgment of acquittal should not be granted unless “ ‘there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.’ ” Williams v. State, 967 So.2d 735, 755 (Fla.2007) (quoting Gudinas v. State, 693 So.2d 953, 962 (Fla.1997)).
Because the cocaine was found in a room across the hall from Evans’ location, and in a house which had several occupants, the State must demonstrate Evans constructively possessed the cocaine by showing he had “dominion and control” over the contraband and knowledge of the presence of the contraband. State v. Holland, 975 So.2d 595, 597 (Fla. 2d DCA 2008). Evans did not have exclusive possession of the cocaine at the time he was discovered by police; thus, the two elements cannot be inferred and must be proven by independent proof.[4] See Brown v. State, 8 So.3d 464, 465 (Fla. 2d DCA 2009); Holland, 975 So.2d at 598. This proof “may consist of evidence that the defendant had actual knowledge of the presence of the contraband or evidence of incriminating statements or circumstances, other than simple proximity to the contraband, from which the jury could infer the defendant’s knowledge.” Wagner v. State, 950 So.2d 511, 513 (Fla. 2d DCA 2007).
At trial and throughout his appeal, Evans theorized that someone else in the house threw the drugs into the east bedroom during the police raid. In support of his argument, Evans pointed out that there were other fingerprints obtained from the east bedroom that did not match his. However, Evans’ assertion merely creates a dispute of material fact as to the exclusive occupancy of the east bedroom. See Holland, 975 So.2d at 598. When we infer the evidence in the light most favorable to the State, the evidence suggests that Evans was cutting crack cocaine with a razor on top of the cereal box, but stopped and ran into the bathroom when he heard the police entering the premises. The State’s case is supported by the location of the crack cocaine, which police found scattered on top of the cereal box all over the floor by the door of the east bedroom. Evans’ fingerprints were found on the cereal box. Evans was also wearing latex gloves, which a law enforcement official testified were customarily used by drug distributors to keep the crack cocaine from being contaminated or coming into contact with human skin. A pair of these gloves was found in the cereal box containing Evans’ fingerprints. Similar gloves were found on the dresser and on the bed next to the two twenty-dollar bills. The room also contained a drug ledger, digital *90 scale, and police scanner. Evans’ fingerprints were also found on some of the CDs in the Walmart bag, which also held the digital scale and the fake Mountain Dew can containing crack cocaine.
Based on the evidence, one could infer that when Evans fled into the bathroom, he dropped his pants and sat on the toilet in an attempt to separate himself from the drugs in the east bedroom. Law enforcement reported the bathroom door being ajar, not closed, when they were surveying the house, which supports the theory that Evans ran into the bathroom and, in his haste, did not shut the door. In the meantime, Adams was hiding in the bathroom closet and attempting to cover himself with towels. The toilet itself contained no urine or excrement, most likely due to the short time span between the police entry and Evans’ mad dash across the hall. Most importantly, Evans was still wearing the latex gloves when he was discovered. The gloves are an important factor connecting him between the bathroom and the drug activity in the east bedroom.
Thus, we believe the surrounding circumstances of Evans’ location, combined with the location and amount of narcotics and drug paraphernalia found in the east bedroom, provided sufficient justification for a rational jury to conclude beyond a reasonable doubt that he constructively possessed the drugs. See Jackson v. State, 995 So.2d 535, 541 (Fla. 2d DCA 2008) (“The fact that Jackson was known to habitually carry a purse and the presence of his credit card support the conclusion that the Burberry purse [containing drugs] was Jackson’s.”); cf. Wagner, 950 So.2d at 513 (noting the absence of fingerprints failed to connect Wagner to the contraband or the containers in which it was found).
Finally, Evans relies on Edison v. State, 954 So.2d 1235 (Fla. 2d DCA 2007), for the concept that “ ‘[w]here two or more inferences in regard to the existence of a criminal act must be drawn from the evidence and then pyramided to prove the crime charged, the evidence lacks the conclusive nature to support a conviction.’ ” Id. at 1238 (quoting I.F.T. v. State, 629 So.2d 179, 180 (Fla. 2d DCA 1993)). However, Evans and I.F.T. are the progeny of Benson v. State, 526 So.2d 948, 952 (Fla. 2d DCA 1988), which specifically states “the general rule against the pyramiding of inferences is not rigidly applicable in all cases.” The exception provides that “ ‘when no contrary reasonable inference may be indulged, such inference is elevated for the purpose of further inference to the dignity of an established fact.’ ” Benson, 526 So.2d at 952 (quoting Voelker v. Combined Ins. Co. of Am., 73 So.2d 403, 407 (Fla.1954)); see also Gustine v. State, 86 Fla. 24, 97 So. 207, 208 (1923) (noting the pyramiding of inferences is prohibited “[i]f the facts in proof are equally consistent with some other rational conclusion than that of guilt”).
“[T]he circumstantial evidence test guards against basing a conviction on impermissibly stacked inferences.” Miller v. State, 770 So.2d 1144, 1149 (Fla.2000). Circumstantial evidence, by its very nature, is not free from alternate interpretations, and “[t]he State is not required to ‘rebut conclusively every possible variation’ of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant’s theory of events.” Law, 559 So.2d at 189 (quoting State v. Allen, 335 So.2d 823, 826 (Fla.1976)). Otherwise, “circumstantial evidence would always be inadequate to establish a preliminary showing of the necessary elements of a crime.” Allen, 335 So.2d at 826.
Here, the State met its threshold burden establishing a reasonable theory that, upon *91 being warned of the police raid, Evans ran out of the east bedroom to the bathroom across the hall in an attempt to fool the police into believing that he was merely using the bathroom at the time of the police’s search of the premises. However, Evans’ attempt to evade police was thwarted by the hurried condition of the drugs left in the east bedroom, the partially open bathroom door, the undisturbed water in the toilet, his gloved attire, and Adams’ presence in the bathroom closet. Though it is possible someone else threw the drugs into the east bedroom, Evans’ theory is merely an alternate interpretation and “it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.” Law, 559 So.2d at 189. Accordingly, we find that, when construing the evidence in the light most favorable to the State, a rational trier of fact could find Evans constructively possessed the crack cocaine, and thus Evans is not entitled to relief on this argument.
III. The Improper Closing Arguments
Evans also argues the trial court erred in denying his motions for a mistrial after the State improperly commented on his right to remain silent during closing arguments. The State highlighted the fact that Evans was the only person found in the house wearing gloves and said:
[Assistant State Attorney]: [B]ut if [Evans] wasn’t guilty, if he wasn’t guilty, wouldn’t there be some reasonable explanation for him wearing these gloves under the totality of what we find in that house, the circumstances?
[Defense Counsel]: Objection. Judge, I would like to approach.
The court: Approach.
[Defense Counsel]: Judge, I object as to improper argument in closing.
The court: Well, I’m going to have him move on. I certainly don’t want him to dwell on it. It’s certainly not the burden of the defendant to explain anything.
[Defense Counsel]: And I would ask for a mistrial at this point.
The court: Your motion will be denied.
Shortly thereafter, the State remarked, “And be very clear, evidence that there is no reasonable explanation for him having those gloves on except that he was in control of the east bedroom.” Evans objected again and, before the trial court could respond, the State commented in front of the jury, “What other reasonable conclusion can we draw?” The tidal court overruled the objection. Though Evans did not make any further objections, the State continued to comment that “there is no reasonable explanation for [Evans’ location in the house]” and “[t]here is no reasonable explanation for those gloves and the circumstances, especially when nobody else had them on.”
“In Florida, we have adopted a very liberal rule for determining whether a comment constitutes a comment on silence: any comment which is ‘fairly susceptible’ of being interpreted as a comment on silence will be treated as such.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). This is because the State, not the defendant, is required to prove an element of a crime beyond a reasonable doubt. Likewise, the defendant has the constitutional right to decline to testify against himself in a criminal proceeding. Rodriguez v. State, 753 So.2d 29, 37 (Fla.2000). Therefore, the State is prohibited from commenting on the defendant’s failure to produce evidence to refute an element of the crime “because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence.” Jackson v. State, 575 So.2d 181, 188 (Fla. *92 1991); see also Fla. R.Crim. P. 3.250.[5] We find the State’s comments are susceptible of being interpreted by the jury as an impermissible comment on Evans’ right to remain silent or his failure to mount a defense.
In response, the State contends any error was harmless because there was overwhelming evidence of Evans’ guilt. For the State to prevail on a harmless error argument, it must “prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” DiGuilio, 491 So.2d at 1138.[6] If this court “cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.” Id. at 1139. Upon reviewing the record, we cannot say beyond a reasonable doubt that the State’s comments on Evans’ right to remain silent did not contribute to the jury’s finding of guilt. Accordingly, we find the trial court erred by failing to declare a mistrial and reverse Evans’ judgment and sentence.
Reversed in part, affirmed in part, and remanded for a new trial.
KHOUZAM, J., Concurs.
WALLACE, J., Concurs in part and dissents in part.

. In all, eight people were found inside the house, including Kutner.

. Though the Walmart bag itself was not introduced into evidence, several pictures of the Walmart bag were received at trial. The pictures represented a fair and accurate representation of the bedroom and the Walmart bag as it appeared during the execution of the search warrant.

. Circumstantial evidence involves certain facts and circumstances from which the trier of fact may infer that the ultimate facts in dispute existed or did not exist. Orme v. State, 677 So.2d 258, 261 (Fla.1996) (citing Davis v. State, 90 So.2d 629, 631 (Fla.1956)).

. Contrary to the dissenting opinion, the State did not need to prove that Evans was in exclusive possession of the east bedroom itself. Rather, the State needed to demonstrate Evans was in constructive possession of the cocaine located inside the east bedroom. See Holland, 975 So.2d at 598.

. We note an exception to this rule is when the defendant voluntarily assumes some burden of proof by presenting the defenses of alibi, self-defense, or defense of others. See Jaclcson, 575 So.2d at 188. These factors are not present in this case.

. The Florida Supreme Court emphasizes that the test of harmless error "is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.” DiGuilio, 491 So.2d at 1139.