WALLACE, Judge.
Upon consideration of the Appellant’s motion for rehearing filed November 28, 2012, it is ordered that the Appellant’s motion for rehearing is granted; this court’s opinion dated November 14, 2012, is withdrawn; and the attached opinion is substituted therefor.
Appellant’s motion for rehearing en banc is denied as moot.
Corey Joshua Rocker appeals his conviction and sentence for first-degree felony murder, a violation of section 782.04(l)(a)(2)(d), Florida Statutes (2008). Because the State failed to meet its burden of proving that Rocker intended for the predicate offense of robbery to be committed and that he assisted in the commission of the attempted robbery, we conclude that the trial court erred in denying Rocker’s motion for judgment of acquittal, and we reverse his conviction for felony murder and remand for discharge.[1]
I. FACTUAL BACKGROUND
The evidence at Rocker’s trial established that on January 24, 2008, sixteen-year-old Rocker made arrangements to meet the victim, Brennon Days, to purchase drugs. At about 6:48 p.m., Rocker contacted an acquaintance, Ryan Haynes, and told him he wanted to purchase drugs. When Haynes informed Rocker that he was unable to provide the drugs, Rocker requested the victim’s telephone number. According to the testimony elicited at trial, the victim sold drugs to Rocker at least three times in the past. At 6:55 p.m., Rocker called the victim.
Later that same night around 10 p.m., Rocker and his codefendant, Miterrio Banks, went to the home of another acquaintance, Golden Butler. While at Butler’s home, Rocker attempted to call the victim three times between 10:18 p.m. and 10:30 p.m. The victim returned Rocker’s phone calls around 10:32 p.m. Rocker then called the victim around 10:40 p.m., and the victim’s last phone call to Rocker was at 10:45 p.m. While Rocker was on the phone with the victim, Butler asked Rocker to whom he was talking and Banks told him to “shush,” to be quiet.
When Rocker and Banks arrived at Butler’s home, they had a pistol with them, and Butler testified that Rocker and Banks passed the pistol back and forth, “fondling it.” During their brief stay at Butler’s, neither Banks nor Rocker mentioned anything about using the pistol or robbing anyone. Before Rocker and Banks left Butler’s home, they asked Butler if he wanted to “go handle something.” Butler testified that the question could have meant, “Anything. Girls, money, anything.” Butler declined the invitation, and Rocker and Banks left Butler’s home with *901 the pistol. Butler left his house almost immediately after Rocker and Banks left, walking about a car length behind them. Butler testified that he left the house to sell cocaine.
Butler walked behind Rocker and Banks toward the entrance of the neighborhood. Butler then saw the victim’s car drive up, and Butler testified that -Banks approached the car by himself and bent down at the driver’s side window. At this point, Butler did not see Rocker anywhere nearby. Butler heard Banks ask the victim, “Where the money at?” Butler then heard a gunshot. At the sound of the gunshot, Butler became frightened and ran back toward his house. He also saw Rocker- and Banks running away from the victim’s car. Banks told Rocker, “I think he’s dead.” The victim died from a gunshot wound to his head.
Neighbors testified that they saw people running from the scene after the shooting. Frederick and Lisa Dessaure testified that they heard a gunshot.- When Mr. Dess-aure looked outside his window, he saw one man running past his window. Mrs. Dessaure looked out from a different window and saw two people running past her house. Mr. Dessaure called 911 at about 10:50 p.m. Neither Mr. Dessaure nor Mrs. Dessaure could identify the people running past their house.
Henry Hall, Rocker’s uncle, testified that Rocker called him at about 11 p.m. and asked Hall to pick him up at a location close to where the shooting took place. When Hall picked up Rocker, he noticed police activity in the area and asked Rocker if he knew what happened. Rocker denied knowing why police cars were in the area. Shortly after Hall picked up Rocker from the neighborhood, Rocker was arrested and charged with first-degree felony murder. Although police found trace amounts of gun residue on Rocker’s hands the day after the shooting, testimony was presented that such trace amounts could come from merely handling a gun.
Rocker and Banks, his codefendant, were tried jointly. Following the close of the State’s case, Rocker moved for judgment of acquittal, arguing that the State failed to meet its evidentiary burden. The trial court denied the motion. Rocker renewed his motion at the close of all the evidence, and the trial court again denied it. The jury returned a verdict finding Rocker guilty of first-degree felony murder, and he was sentenced tó a mandatory term of life in prison. On appeal, Rocker argues that the trial court erred in denying his motion for judgment of acquittal because the State presented insufficient evidence that he acted as a principal in the attempted robbery of the victim.
II. DISCUSSION

A. The Standard of Review

When “the evidence is insufficient to warrant a conviction,” the trial court must enter a judgment of acquittal. Fla. R.Crim. P. 3.380(a). Our review of the trial court’s- ruling denying Rocker’s motion for judgment of acquittal is de novo. Pagan v. State, 830 So.2d 792, 803 (Fla.2002); Evans v. State, 26 So.3d 85, 88 (Fla. 2d DCA 2010). “ ‘However, where a conviction is based wholly upon circumstantial evidence, a special standard of review applies.’ ” Deparvine v. State, 995 So.2d 351, 376 (Fla.2008) (quoting Darling v. State, 808 So.2d 145, 155 (Fla.2002)). “ “Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.’ ” Id. (quoting Darling, 808 So.2d at 155).

*902
B. Analysis

First-degree murder includes the unlawful killing of a person when committed by someone engaged either in the perpetration of, or in the attempt to perpetrate, a robbery. § 782.04(l)(a)(2)(d), Fla. Stat. (2008). Rocker was convicted of first-degree murder as a principal under section 777.011, Florida Statutes (2008), on the theory that he aided and abetted Banks in the attempted robbery of the victim. In order to convict Rocker as a principal, the State had to prove two elements: (1) that Rocker intended for the robbery to be committed and (2) that Rocker assisted Banks in the commission of the offense. See McBride v. State, 7 So.3d 1146, 1148 (Fla. 2d DCA 2009) (citing Acord v. State, 841 So.2d 587, 589 (Fla. 2d DCA 2003)). Stated differently, the State was required to prove that Rocker aided and abetted the commission of the attempted robbery and that he had the requisite specific intent to participate in the offense. See Valdez v. State, 504 So.2d 9,10 (Fla. 2d DCA 1986).
Under the case law, Rocker’s mere presence at the scene, knowledge of the robbery attempt, and flight from the scene are insufficient to support his conviction as a principal for Banks’ conduct. See McBride, 7 So.3d at 1148 (citing A.B.G. v. State, 586 So.2d 445, 447 (Fla. 1st DCA 1991)); Valdez, 504 So.2d at 10. Granted, the State could show Rocker’s intent by circumstantial evidence. But if the State’s proof of intent rested solely upon circumstantial evidence, then the proof had to be not only consistent with Rocker’s guilt, but also inconsistent with his reasonable hypothesis of innocence. Valdez, 504 So.2d at 10.
Evidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, ... is not sufficient to sustain [a] conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict. Circumstantial evidence which leaves uncertain several hypotheses, any one of which may be sound and some of which may be entirely consistent with innocence, is not adequate to sustain a verdict of guilt. Even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence.
Davis v. State, 90 So.2d 629, 631-32 (Fla.1956).
At the trial, the general outline of the events leading to the botched robbery and the victim’s death was essentially undisputed. However, the nature of the involvement of Rocker and Banks in these events was substantially different. Butler, the State’s only eyewitness to the attempted robbery and to the shooting of the victim, testified that Banks walked to the victim’s car, bent down to the driver’s side window, and demanded money. At that point, the pistol held by Banks discharged, fatally wounding the victim. The argument in footnote 5 of the dissent concerning the jury’s ability to assess the credibility of Butler’s testimony ignores the jury’s express finding of fact in the verdicts naming Banks — not Rocker — as the shooter. Physical evidence corroborated Butler’s identification of Banks — not Rocker — as the individual who approached the victim’s car and demanded money. A forensic technician found a latent fingerprint matching Banks’ left thumbprint on the exterior of the front door of the victim’s car. Thus the State presented direct evidence of Banks’ guilt as the perpetrator of *903 the attempted robbery that resulted in the victim’s death.
The State’s case against Rocker was very different. Rocker was not carrying the pistol, and he made no demand for money. Butler did not place Rocker at or near the victim’s car during the attempted robbery and shooting. Indeed, the evidence at trial did not establish Rocker’s precise whereabouts or actions at the time that Banks was pursuing his robbery attempt. Of course, the State did establish that Rocker made a series of telephone calls to the victim designed to induce him to come to the neighborhood where the robbery occurred. If Rocker intended to commit the robbery, then one could conclude that Rocker assisted Banks by luring the victim to the scene. However, because the purpose of Rocker’s telephone calls is unknown, the critical question on the motion for judgment of acquittal was Rocker’s intent. On the one hand, the State’s theory of the case was that Rocker and Banks jointly planned to lure the victim to the neighborhood to rob him. On the other hand, Rocker’s hypothesis of innocence was that he contacted the victim to set up a drug transaction without prior knowledge that Banks intended to take advantage of the situation to rob the victim.[2]
The State’s case against Rocker as a principal to the attempted robbery was purely circumstantial and can be summarized as follows: (1) Rocker made a series of phone calls designed to lure the victim to the place where he was ultimately killed; (2) Rocker was seen handling the murder weapon before the attempted robbery; (3) Rocker was seen going to the arranged location for the meeting where the murder occurred; (4) Rocker and Banks asked Butler if he wanted “to go handle something”; and (5) Rocker was seen running from the scene within minutes of the murder. Neither Rocker nor Banks testified at the trial. Nor did the State introduce evidence of any out-of-court inculpatory statements made by either man after the event. Butler was the State’s only eyewitness to the botched robbery perpetrated by Banks. But Butler’s testimony did not provide any evidence concerning Rocker’s intent. Furthermore, beyond the general motive for robbery that can be inferred from mere commission of the crime, no evidence existed that Rocker had a vendetta against the victim or had expressed a need or desire for money that could have motivated the crime and provided evidence of Rocker’s intent. Thus, to avoid a judgment of acquittal, the State had to present evidence that was not only consistent with Rocker’s guilt but that was also inconsistent with his reasonable hypothesis of innocence. See Valdez, 504 So.2d at 10.
It was undisputed at trial that Rocker placed several telephone calls to the victim to induce him to come to the neighborhood where the attempted robbery and murder occurred. Nevertheless, Rocker cannot be properly convicted as a principal based on this evidence alone. “Merely creating circumstances or conditions that allow another to commit an independent offense is not enough to establish one as a principal to that offense.” C.D. v. State, 2 So.3d 994, 995 (Fla. 2d DCA 2008). Rocker’s telephone calls to the victim certainly caused the circumstances or conditions that enabled Banks to pursue his attempt to rob the victim. However, Rocker’s placement of the telephone calls is insufficient to establish his liability as a principal for that offense.
*904 Moreover, as we have already seen, Rocker’s placement of the telephone calls to the victim was subject to more than one explanation. The calls may have been part of a ruse to set up a robbery of the victim. However, the calls may also have been nothing more than an attempt to set up a purchase of drugs. The evidence showed that Rocker had bought drugs from the victim at least three times in the past — • and probably more — without incident. The telephone calls cannot support the conviction of Rocker as a principal absent evidence of his specific intent that the robbery occur. The telephone calls themselves are not sufficient to establish such intent. See Chaudoin v. State, 362 So.2d 398, 401 (Fla. 2d DCA 1978); Grover v. State, 581 So.2d 1379, 1381 (Fla. 4th DCA 1991) (finding that “it is the tendency to establish one fact to the exclusion of contrary facts which gives circumstantial evidence the force of proof ... [,] and when circumstances are reasonably susceptible of two conflicting inferences they are probative of neither [guilt nor innocence]”); Fox v. State, 469 So.2d 800, 802 (Fla. 1st DCA 1985).
Additionally, the record reflects that before Rocker called the victim from Butler’s residence, he called Haynes. Haynes testified for the State at trial that Rocker had called him seeking to buy drugs. Haynes had just been released from jail, and he was confined to his residence; Haynes told Rocker that he was unable to supply anything. During Rocker’s telephone conversation with Haynes, Rocker asked for the victim’s telephone number. Haynes furnished the number, and Rocker then telephoned the victim. This evidence suggests that Rocker’s intent in later contacting the victim was to buy drugs, not to commit a robbery.
It was also undisputed at trial that Rocker and Banks shared possession of a pistol at Butler’s residence. But Rocker’s joint possession of a pistol with Banks does not establish that Rocker intended to rob the victim. Butler testified that he did not consider the possession of a pistol by Rocker and Banks to be unusual. On the contrary, he said that the possession of guns is common in his neighborhood. Our common sense and experience tells us that the presence of firearms at drug transactions is a frequent occurrence. Thus the possession of a firearm by Rocker and Banks is just as consistent with a planned drug buy as it is with a proposed robbery.
Next, Butler testified that he observed Rocker walking with Banks to the arranged location for the planned drug buy. However, similar to Rocker’s joint possession of a pistol with Banks, Rocker’s act of approaching the scene with Banks is just as consistent with the theory that he was participating in a drug transaction as it is with the theory that he was participating in a robbery. In the absence of additional proof, such evidence is insufficient to prove Rocker’s intent to commit a robbery.
As evidence of Rocker’s intent, the State highlights that before Rocker and Banks left Butler’s house, they asked him if he wanted to “go handle something.”[3] However, this request is vague at best and subject to more than one explanation. Butler did not infer from the inquiry the nature of the activity that was being proposed. On direct examination, he testified that it could have meant, “Anything. Girls, money, anything.” When asked about the inquiry again on cross-examination, Butler agreed that it could have meant “[g]irls, drugs, anything.” Notably, Butler also testified that he did not think *905 that whatever it was he was being asked if he wanted to “handle” would involve the pistol that Rocker and Banks had already displayed to him. The inquiry at issue is just as consistent with Rocker’s innocence as it is with his guilt.
In addition, an assumption that an inquiry to Butler about “handling something” necessarily referred to a planned robbery of the victim is at odds with the known facts in two respects. First, Butler was adamant that neither Rocker nor Banks said anything to him about robbing someone. Second, assuming that Rocker and Banks were planning to rob the victim, they had no reason to add a third person to their group. Rocker and Banks had only one gun; they did not require additional personnel. If the two men had involved Butler in their hypothetical plot, Butler’s involvement would have only resulted in reducing the shares of the loot for Rocker and Banks from one-half to one-third.
Last, the State points to Rocker’s flight from the scene within minutes of the murder as evidence of his intent to commit a robbery. While Butler testified that he observed Rocker and Banks running away from the victim’s car after Banks shot the victim, this evidence is also unavailing. Flight from the scene is insufficient to support a conviction of an accused as a principal. Staten v. State, 519 So.2d 622, 624 (Fla.1988) (finding that “ ‘mere presence at the scene ... or a display of questionable behavior after the fact, is not sufficient to establish participation [as a principal]’ ” (quoting Collins v. State, 438 So.2d 1036, 1038 (Fla. 2d DCA 1983))); see also McBride, 7 So.3d at 1148; A.S.F. v. State, 70 So.3d 754, 757 (Fla. 4th DCA 2011); A.B.G., 586 So.2d at 447; J.H. v. State, 370 So.2d 1219, 1220 (Fla. 3d DCA 1979).
Moreover, Rocker may have fled the scene for a variety of reasons. He may have been concerned about his culpability in the failed drug transaction. The unexpected discharge of the pistol wielded by Banks provided ample cause for fright and flight. Butler, who was not involved in the purchase of drugs from the victim or in the attempted robbery, also fled the scene. The evidence of Rocker’s flight does not provide evidence of his intent to participate in the robbery of the victim.
III. CONCLUSION
Based on the foregoing review of the evidence, which was purely circumstantial, we find that the State did not present facts inconsistent with Rocker’s reasonable hypothesis of innocence. The State failed to present any evidence indicating Rocker’s intent. Therefore, to reach the conclusion that the evidence was sufficient to support Rocker’s conviction as a principal would require an impermissible stacking of inferences. See I.Y.D. v. State, 711 So.2d 202, 203 (Fla. 2d DCA 1998). Here, “one could intuitively conclude that [Rocker] might be guilty. However, ‘guilt cannot rest on mere probabilities.’” Davis v. State, 761 So.2d 1154, 1159 (Fla. 2d DCA 2000) (quoting Arant v. State, 256 So.2d 515, 516 (Fla. 1st DCA 1972)). Accordingly, we reverse Rocker’s judgment and sentence and remand for his discharge.
Reversed and remanded for discharge.
NORTHCUTT, J., Concurs with opinion.[4]
VILLANTI, J., Dissents with opinion.

. Rocker raised several arguments on appeal; however, because we conclude that his conviction warrants reversal on this ground, we need not address the merits of the other grounds raised.

. Another possible scenario is that Banks acted on the spur of the moment in committing his robbery attempt.

. Butler did not specify whether Rocker or Banks asked him this question. Unfortunately, neither the prosecutor nor defense counsel requested clarification on this point.