CRENSHAW, Judge.
Jerome Parker appeals his judgment and sentence to sixty months in prison, followed by fifteen years of probation, after a jury found him guilty of robbery with a firearm. Because the trial court abused its discretion by denying Mr. Parker’s motions for a mistrial following inappropriate comments made by the State on Mr. Parker’s postarrest silence, we reverse.

Factual Background

On October 1, 2011, Juan Galvan was robbed at gunpoint by two men. Mr. Gal-van reported this robbery to the police, and he provided a description of the vehicle the robbers fled in, along with a partial license plate. Later that night, Mr. Parker and another individual, Brandon Smith, were stopped after being seen near a vehicle that matched the description provided by Mr. Galvan. A third gentleman, Terrance Keesee, was also identified as a possible suspect.
*1025 Subsequently, law enforcement brought Mr. Galvan to the location where they encountered Mr. Parker, Mr. Smith, and Mr. Keesee. At that time, a show-up identification was conducted. When asked if any of these individuals had been involved in the robbery, Mr. Galvan was confident in his identification of Mr. Keesee as one of the perpetrators — the one who had carried the gun — but he was not positive about his identification of Mr. Parker.[1] Mr. Galvan noted that Mr. Parker had a different shirt on, than the man who robbed him.
Deputy Lawrence Rials was the deputy who conducted Mr. Galvan’s show-up identification. Deputy Rials explained at trial, “during a show up you take the victim and you put them in the back of your patrol car, you turn on all your lights, ... you drive up to the suspect, approximately 40, 50 feet away, you light them up with your spotlight, and then you ask ... is that the person.” Deputy Rials reinforced that Mr. Galvan was uncertain regarding his identification of Mr. Parker, acknowledging “[o]n the second one [sic] Jerome Parker he thought that’s who it was but he couldn’t be 100 percent.”
Detective Robert Spradley also testified at Mr. Parker’s trial. Detective Spradley stated that after being placed under arrest, Mr. Parker provided some information to law enforcement about his activities on the night in question. For example, according to Detective Spradley, Mr. Parker admitted that he and Mr. Smith picked up Mr. Keesee from the side of the road, but Mr. Parker refused to answer questions about his activities during the time of the robbery. Additionally, Detective Spradley testified that he found a gun matching the description provided by Mr. Galvan in the general vicinity where Mr. Parker and the described vehicle were initially located. Law enforcement, however, was unable to find usable DNA or fingerprint evidence on the gun.
Based on this evidence, Mr. Parker was found guilty of robbery with a firearm. This timely appeal followed;

Analysis

The trial court abused its discretion by denying Mr. Parker’s motions for a mistrial. See Johnson v. State, 951 So.2d 11, 12 (Fla. 1st DCA 2007). As this court previously stated:
The due process clause of the Florida Constitution ... guards against prosecu-torial comments' on a defendant’s post-arrest silence. The standard for determining what constitutes a comment on post-arrest silence is fairly liberal. If the comment is fairly susceptible of being construed by the jury as a comment on the defendant’s exercise of his or her right to remain silent, it violates the defendant’s right to silence. Thus, evidence or argument that is fairly susceptible of being deemed a comment on the right of silence should be excluded.
Green v. State, 27 So.3d 731, 735 (Fla. 2d DCA 2010) (internal citations and quotation marks omitted). If a comment is fairly susceptible of being construed as a comment on the defendant’s exercise of his right to remain silent, the court must determine if admission of the comment was harmless error. State v. DiGuilio, 491 So.2d 1129, 1134-35 (Fla.1986).
In this case, during closing the State argued:
And what Detective Spradley says is, okay great, so you and Smith are in the car the whole time and you pick up Keesee, now you have three of you. here with the vehicle, a robbery occurred in the meantime, right after you picked up *1026 Keesee what did you do, and he can’t answer the detective. Okay. After you picked up Keesee where did you go, and he won’t answer. ...
[H]e tells the officer it was me, Smith[,] and Keesee in the car, but when asked what they did or where they went he couldn’t answer the detective that question.
(Emphasis added). The defense moved for a mistrial after each of these comments, but the trial court denied both motions.
Each statement emphasized in the two excerpts above constitutes either a direct comment or a comment fairly susceptible of being construed as a comment on Mr. Parker’s postarrest silence.[2] As such the only question that remains to be answered is whether admission of these improper comments was harmless.[3]
“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” DiGuilio, 491 So.2d at 1138; Evans v. State, 26 So.3d 85, 92 (Fla. 2d DCA 2010). Evaluating whether error was harmless in Green, this court stated:
We ... reject the State’s argument that any error arising from these comments was harmless.... Here, the State had no physical evidence placing Green at the scene of the crime, and none of the surviving robbery victims identified Green as a participant in the events.... Because the evidence of Green’s guilt was far from conclusive, the error in permitting these comments was not harmless.
27 So.3d at 737.
Similarly, in this case, the State had no physical evidence placing Mr. Parker at the scene of the crime, and the State’s only witness could not conclusively identify Mr. Parker as one of the perpetrators. The State provided testimony suggesting that Mr. Parker was with Mr. Kee-see during the time of the robbery, but only circumstantial evidence implicates Mr. Parker’s direct involvement. Therefore, we cannot say there is no reasonable possibility the State’s comments on Mr. Parker’s postarrest silence contributed to his conviction because the evidence against Mr. Parker is far from conclusive. Accordingly, we reverse.
Reversed and remanded.
MORRIS, J., and DAKAN, STEPHEN L., Associate Senior Judge, Concur.

. During deliberation the jurors requested the court read back the portion of Mr. Galvan’s testimony “where he attempts to identify the suspect.” The court granted this request.

. A review of Detective Spradley’s testimony confirms that the State's comments in closing are comments on Mr. Parker’s silence, not a characterization of statements actually made by Mr. Parker. For example, when the State asked whether Mr. Parker explained what he did after picking up Mr. Keesee, Detective Spradley answered, "He just didn't answer the question.... [H]e said after they picked up Mr. Keeseef — ]he didn’t give an answer as to where they went or what they did."

. An isolated comment on a defendant’s failure to answer a single question during a voluntary, post-Miranda conversation with law enforcement does not violate the constitutional right to remain silent. See Thomas v. State, 726 So.2d 357 (Fla. 1st DCA 1999). These are not the facts of our case. Mr. Parker clearly refused to answer a series of questions directly related to his activities during the time of the robbery, and comments on Mr. Parker's silence were not isolated.