DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SAMUEL RANDALL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-2012

[February 13, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dennis D. Bailey, Judge; L.T. Case No. 15-11948CF10A.

Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Deborah Koenig, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges his conviction as a principal for manslaughter with a deadly weapon. He contends that the trial court erred in denying his motion for judgment of acquittal when the State failed to prove that he intended the crime to be committed or that he did any act to assist in the crime. We agree and reverse the conviction and sentence.

At trial, the State presented evidence that in the early morning hours on May 17, 2015, a witness found the victim bleeding profusely behind a building close to the bus station in Fort Lauderdale. The victim died of his wound. No physical evidence implicating any person was recovered from the scene.

Officers handed out flyers with the victim's picture asking for information. A woman, Michelle, informed the police of her interaction with the victim.

Michelle was at the bus station on the evening before the crime, ingesting drugs and looking for more drugs. "Taz," a drug dealer she knew, was there. He told her that there was a guy looking for a girl, and the guy would pay. Taz then introduced her to the victim. Michelle and the victim agreed that the victim would buy her drugs and something to eat in exchange for sex. The victim purchased the drugs from Taz and took Michelle to get something to eat. Then the two went down an alleyway, and she found a cardboard box to lie on. She began rolling a cigarette, and the victim began grabbing her and demanding that she hurry up. She started to walk towards the bus terminal to look for a condom, and the victim yelled at her and demanded the drugs back if she would not have sex with him. This disturbed Michelle.

At the terminal, Taz asked her why she was shaken up, and she told him that the victim grabbed her and she didn't feel safe. Taz asked the defendant, Samuel Randall, who was an acquaintance of both Taz and Michelle, to walk with him to the alley to talk to the victim and to tell him not to be so rough with Michelle. She was going to do what she had agreed to do, but he should not be so rough with her. Michelle denied that there was any discussion of robbing the victim.

Taz and Randall went back down the alley to confront the victim. Michelle smoked some more drugs and left the area after a while when no one returned. She did not go back and have sex with the victim.

The police conducted two interviews of Randall, which the jury heard. In his first statement, Randall said that he was at the bus terminal when Taz called to him and told him to come with him. Michelle had said that the victim had put his hands on her and taken her money. They walked to the area where she had been. The victim approached Randall and Taz. Taz hit the victim, and then the victim swung at Randall, who hit the victim back. Then Taz cut the victim with a knife. Randall told police, "all of a sudden, I seen blood, and a lot of it and the dude fell back" and hit the fire hydrant. He described the knife that Taz had. He denied that he stabbed the victim.

Police took a second statement from Randall. This time Randall said that he went with Taz to confront the victim about putting his hands on Michelle and taking her money. Taz asked the victim where the money was that he took from Michelle. The victim said she was lying. Taz "got up on him," meaning that Taz hit the victim. Randall said that they "went to tussling" and throwing hands. The victim swung at Randall, and Randall hit the victim back. Then the victim swung at Taz, and Taz hit

him back. At that point, Randall saw Taz pull a knife and cut the victim. Randall said that he panicked and ran back to the terminal. Randall saw his cousin and went to his cousin's house.

The State proceeded on the theory that Randall was a principal to manslaughter. The defense moved for a judgment of acquittal on the grounds that the State had offered no evidence either that Randall had intended the crime be committed or that he had done any act to assist Taz in its commission. The trial court denied the motion, and the jury convicted Randall of manslaughter. This appeal follows.

A motion for judgment of acquittal is reviewed de novo. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002); *Hobart v. State*, 175 So. 3d 191, 199 (Fla. 2015). On motion for judgment of acquittal, the court must determine whether there is competent substantial evidence to support a conviction. The State has the burden of proving by competent substantial evidence the elements of the offense. *Butler v. State*, 715 So. 2d 339, 340-41 (Fla. 4th DCA 1998). In moving for a judgment of acquittal, the defendant admits all facts adduced and every conclusion favorable to the State that a jury may reasonably infer from the evidence, but if the State fails to prove each element of the offense beyond a reasonable doubt, then it has not presented a prima facie case. *Fitzpatrick v. State*, 900 So. 2d 495, 507 (Fla. 2005); *see Beasley v. State*, 774 So. 2d 649, 657, 659 (Fla. 2000).

In its case against appellant, the State charged him with manslaughter as a principal. In order to convict him as a principal to the manslaughter, the State had to prove two elements: 1) that the defendant had the conscious intent that the crime be committed; and 2) that the defendant did "some act to assist the other person in actually committing the crime." *Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988). Randall argues that merely having knowledge that Taz was committing the crime and mere presence at the scene are insufficient to establish participation. *See Messer v. State*, 757 So. 2d 526, 529 (Fla. 4th DCA 2000) (noting that mere knowledge that an offense is being committed is not the same as participation with criminal intent, and mere presence at the scene is not sufficient to establish participation).

The State failed to prove either element to convict Randall as a principal to the crime. There was no evidence that Randall and Taz had the intent to commit any crime when they confronted the victim in the alley. The only evidence showed that they were simply trying to protect Michelle. Although the State argued that Taz and Randall were going to commit a robbery, there was no proof to support that theory. Neither Michelle nor

Randall testified that any robbery was discussed. Both Michelle's testimony and Randall's statements concurred that Taz and Randall were only going to confront the victim about grabbing Michelle and taking her money.

While the State did present proof that the victim had money on him earlier in the evening, and his wallet and money were missing when he was found the next morning, there is no evidence that either Randall or Taz took the wallet. The State improperly relies on multiple stacked inferences to make its case. *See Rocker v. State*, 122 So. 3d 898, 904-05, 908 (Fla. 2d DCA 2013) (holding that to reach the conclusion that the evidence was sufficient to support the defendant's conviction as a principal, the jury would have to impermissibly stack inferences); *Kennedy v. State*, 781 So. 2d 421, 423 (Fla. 4th DCA 2001) (quoting another source) ("An impermissible pyramiding of inferences occurs where at least two inferences in regard to the existence of a criminal act must be drawn from the evidence and then stacked to prove the crime charged; in that scenario, it is said that the evidence lacks the conclusive nature to support a conviction"). The State inferred that the victim was robbed because he was found with no money late at night, and he previously had money earlier in the evening. The State then stacked a second inference that Taz and Randall intended to rob the victim when they confronted him. But other inferences can be drawn from the facts. There was evidence that the victim was drinking and had purchased drugs, so he may have spent his money before he went into the alley. Another equally likely inference is that someone other than Taz took the money, as the victim was not found until hours after the incident. There was no evidence to support the State's inferences. The only direct evidence was Michelle's testimony that they had no discussion of robbing the victim. Based upon these multiple inferences, the State's evidence was insufficient to show that Randall had any intent to commit a crime.

The State's evidence that Randall committed any act to assist in the crime is also lacking. The State had to prove that Randall intended that an act constituting culpable negligence be committed and that he did some act to assist in that crime, not that Randall intended that the victim be stabbed. "Culpable negligence is consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury." Fla. Std. Jury Inst. (Crim.) 7.7. The only evidence was that Randall accompanied Taz to tell the victim not to rough up Michelle. There is nothing to show that Randall should reasonably have known that this was likely to cause death or great bodily harm. And although the State asserts

4

that "[t]here is ample evidence to show that [Randall] took actions to aid Taz when he went with him to confront the victim and punched the victim," the evidence did not show that he was aiding Taz in the manslaughter or in robbing the victim. The only evidence of what occurred came from Randall's statements. Randall recited that Taz and the victim began to tussle, and the victim swung at Randall. He told the police that he hit the victim only after the victim swung at him. The victim also swung at Taz, which is when Taz pulled his knife and cut the victim.

This case is similar to *Hedgeman v. State,* 661 So. 2d 87 (Fla. 2d DCA 1995). There, the victim owed Hedgeman ten dollars. *Id.* at 88. There had been two altercations between the victim and Hedgeman involving this debt in which Hedgeman, Daniel White, and another person were involved. *Id.* On the night of the murder, the victim had gone to a neighbor's apartment. *Id.* Hedgeman, White, and two other males also had gone there. *Id.* White shot the victim. *Id.* There was conflicting testimony as to whether Hedgeman had been in the apartment during the shooting, but after the shooting, Hedgeman had kicked the dying victim. *Id.* Hedgeman was convicted of second degree murder. *Id.* On appeal, the Second District reversed, ruling that there was insufficient evidence to establish that he was a principal to the crime. *Id.* In order to convict him as a principal, the State had to prove that he "intended the crime be committed and did some act to assist the other person in actually committing the crime." *Id.* There was no evidence that Hedgeman fired the gun or that he knew that White intended to kill the victim. *Id.* There was no evidence that White planned to kill the victim and that Hedgemen knew of his plans. *Id.* Furthermore, there was conflicting evidence on whether Hedgeman was in the room when the shots were fired. *Id.* There also "was no evidence that Hedgeman took any action prior to or during the shooting to aid, encourage, or participate in White's act of shooting the victim." *Id.* Moreover, the act of kicking the victim did not contribute to the cause of death. *Id.*

Similarly, in this case, there is no evidence that Randall intended or knew that Taz intended to commit any crime or to involve himself in an altercation of any kind. There is no evidence that Taz was intending to cut the victim with his knife before the victim attempted to hit him. In short, there is no evidence that Randall stabbed the victim, that he knew Taz was going to stab the victim, or that he intended Taz to stab the victim.

Because the State failed to prove that Randall was a principal to the crime of manslaughter, the trial court erred in denying the motion for judgment of acquittal. We thus reverse, direct that the conviction and

5

sentence be vacated, and that a judgment of acquittal be entered and defendant be discharged.

*Reversed and conviction and sentence vacated.*

DAMOORGIAN and KUNTZ, JJ., concur.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**